UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THEODORE E. DAVIS, JR.,

                                  Plaintiff,

                                                                                                    Case # 15-CV-600-FPG

v.

                                                                                                    DECISION AND ORDER

THE STATE UNIVERSITY OF NEW YORK
COLLEGE AT BUFFALO,[1] et al.,

                                  Defendants.
_____

## INTRODUCTION

Plaintiff Theodore E. Davis, Jr., brings this action against Defendants[2] alleging they discriminated against him because of his age, gender, and race and retaliated against him when they declined to renew his employment contract. *See* ECF No. 1-1 ¶¶ 1, 13, 92. Defendants removed the action from New York State Supreme Court to this Court on July 6, 2015. ECF No. 1.

Plaintiff alleges fourteen claims in his complaint: (1)-(2) racial discrimination and retaliation against the individual Defendants in violation of 42 U.S.C. §§ 1981 and 1983; (3)-(5) racial, age, and gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment (EPC) and § 1983; (6) conspiracy to commit racial discrimination in violation of the EPC and 42 U.S.C. § 1985(3); (7) failure to prevent conspiracy to commit racial discrimination in

---

[1] The State University of New York (SUNY) has two campuses in Buffalo: the University at Buffalo and Buffalo State. All events in this action took place at Buffalo State.

[2] Plaintiff sues seven Defendants: SUNY via Buffalo State, Dr. Dennis K. Ponton, Dr. Rita M. Zientek, Dr. Michael J. Littman, Lynne M. Scalia, Dr. Benjamin D. Sackmary, and John L. Denisco. All individuals are sued in their individual and official capacities.

violation of the EPC and 42 U.S.C. § 1986; (8)-(11) racial, age, and gender discrimination and retaliation in violation of New York Human Rights Law § 296; and (12)-(14) racial, age, and gender discrimination in violation of the Equal Protection Clause of Article 1, § 11 of the New York State Constitution. *Id.* ¶¶ 107-216. The first through seventh claims are alleged against the individual Defendants, i.e. all Defendants except SUNY. The remaining claims are alleged against all Defendants.

Before the Court is Defendants' motion for summary judgment. ECF Nos. 32, 38-40. For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND[3]

### I. The Course of Plaintiff's Employment at Buffalo State

Dennis K. Ponton, Provost of Buffalo State, hired Plaintiff for a three-year appointment as an assistant professor in the Buffalo State Business Department in 2009.

During his time at Buffalo State, Plaintiff earned two Faculty Appreciation Awards: one on May 4, 2010, and another on April 30, 2013.

Between February 2011 and February 2013, Plaintiff proposed multiple-year renewals of his employment contract to the Business Department faculty and the Professional Welfare Committee (PWC).[4] After the proposals, Interim Department Chair John L. DeNisco, Associate Professor Lynne M. Scalia, and Professor Benjamin D. Sackmary all either voted against renewal or for one-year renewals. Ponton granted one-year renewals to Plaintiff in 2011 and 2012.

---

[3] All facts are undisputed unless otherwise noted.

[4] Since the parties provide no explanation, the Court assumes the PWC considers the faculty's recommendation on whether to renew a professor's contract and the PWC in turn makes a recommendation to the Provost who makes the final decision.

After February 2013, allegations of plagiarism were levied against Plaintiff. A committee was formed to investigate the allegations. It concluded that Plaintiff had failed to include original sources in sections of his articles constituting intentional plagiarism. Some of his publications had extensive quotations that were not properly cited, some of them verbatim from the original source. And he committed ethical violations by submitting articles to multiple publications and failing to obtain approval to conduct research on human subjects.

In May 2013, Interim Dean Rita M. Zientek recommended non-renewal of Plaintiff's contract. Ponton did not renew Plaintiff's contract in 2013, thereby allowing it to expire on August 13, 2014.

In September 2013, Plaintiff filed a claim alleging race discrimination against DeNisco, Sackmary, and Scalia with the campus Office for Equity and Campus Diversity (OECD). An investigation was conducted through March 2014 that found no basis for Plaintiff's claim.

Despite Ponton's non-renewal in 2013, the PWC met in February 2014 and voted to recommend renewing Plaintiff's contract for two years. Zientek, Scalia, and Department Chair Michael J. Littman advocated for non-renewal of Plaintiff's contract.

Going against the PWC, Ponton confirmed his non-renewal, and Plaintiff's contract expired on August 31, 2014.

## II. Acts of Discrimination

DeNisco was not welcoming to Plaintiff throughout his employment. Shortly after Plaintiff was hired, DeNisco told Plaintiff that him getting the job was a "mistake." He also wanted to put a window in Plaintiff's office door when most doors did not have windows and said that Plaintiff was not able to "assimilate" into the Business Department. In a February 2011 memorandum, DeNisco used a female pronoun to refer to Plaintiff.

Other Defendants were also not welcoming. Sackmary and Littman said they were too busy to mentor Plaintiff; Scalia was not friendly to Plaintiff; Littman thought Plaintiff was an anti-Semite because Plaintiff allowed a student to show a political cartoon that Littman found offensive; and Littman accused Plaintiff of having inappropriate contact with a student in his office, but the student was Plaintiff's daughter.

## III. Similarly-Situated Individuals

Two other assistant professors were hired at approximately the same time as Plaintiff. Dr. Daniel Gaygen was hired as an assistant professor in 2009 with Plaintiff, and Christine Lai was hired two years prior. Gaygen is white and Lai is Asian-American. Gaygen's contract was eventually non-renewed and left Buffalo State after Plaintiff left. Lai was granted tenure after receiving a three-year renewal.

## LEGAL STANDARD

A summary judgment motion should be granted where the moving party shows "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when there can be but one reasonable conclusion as to the verdict, *i.e.*, it is quite clear what the truth is, and no rational factfinder could find in favor of the nonmovant." *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)) (quotation marks and citations omitted). On the other hand, "[s]ummary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." *Id.*; *see also Liberty Lobby*, 477 U.S. at 255 ("Credibility determinations, the weighing

of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

In employment discrimination cases, courts should grant summary judgment motions "with caution," *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 302 (S.D.N.Y. 2009), given their "fact-intensive" nature. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006). Nonetheless, "even in the discrimination context, a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Aspilaire*, 612 F. Supp. 2d at 302; *see also Wrobel v. Cty. of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) ("To survive [summary judgment] . . . [plaintiff] needed to create more than a 'metaphysical' possibility that his allegations were correct; he needed to 'come forward with specific facts showing that there is a *genuine issue for trial*.'")

## DISCUSSION

Two preliminary issues present themselves. First, SUNY argues it is immune from suit under the Eleventh Amendment. ECF No. 32-1 at 40-41. As Plaintiff points out, however, the law does not support SUNY invoking the jurisdiction of this Court via removal only to claim immunity. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 619 (2002) ("It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand."); *Lapides*, 535 U.S. at 624 ("We conclude that the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity . . . ."). SUNY is thus not immune from suit here.

Second, Plaintiff's claims for age and gender discrimination under Article 1, § 11 of the New York constitution cannot stand. *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 351 (S.D.N.Y. 2009) ("Namely, plaintiff alleges defendants discriminated against her because of age and gender. Article 1, section 11's discrimination clause does not provide a basis for a claim on these allegations."). Plaintiff's thirteenth and fourteenth claims are thus dismissed.

## I. Age Discrimination Claims

Defendants are entitled to summary judgment on Plaintiff's remaining age discrimination claims since Plaintiff has not alleged age discrimination. He alleges no theory of age-based discrimination: no discriminatory comments, disparate treatment, nor a hostile work environment. Consequently, no reasonable jury could find for Plaintiff on his fourth and ninth claims.

## II. Conspiracy Claims

To establish a claim under § 1985(3), a plaintiff must allege:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 122 (W.D.N.Y. 2002). The conspiracy must be pled and demonstrated "with some degree of particularity." *Id.* (quoting *Temple of the Lost Sheep, Inc. v. Abrams*, No. 88-CV-3675, 1990 WL 156139, at *11 (E.D.N.Y. Sept. 26, 1990), *aff'd*, 930 F.2d 178 (2d Cir.), *cert. denied*, 502 U.S. 866 (1991)).

Here, Plaintiff's conspiracy claim fails because it is based on conclusory allegations. Plaintiff's alleges no concerted action between Defendants to discriminate against him. He does allege discriminatory acts by each Defendant, but he has shown no connection between them as required. *See Temple of the Lost Sheep, Inc.*, 1990 WL 156139, at *11.

Because Plaintiff's § 1986 claim depends upon his § 1985(3), it also fails. *Moriani v. Hunter*, 462 F. Supp. 353, 357 (S.D.N.Y. 1977) ("[L]iability under [§] 1986 is conditioned upon a conspiracy outlawed by [§] 1985."). Defendants are therefore entitled to summary judgment on Plaintiff's sixth and seventh claims.

## III. Gender and Racial Discrimination Claims

Claims alleging racial discrimination under § 1981 or racial and gender discrimination under § 1983, the EPC, and NYSHRL § 296 are analyzed under the *McDonnell-Douglas* analytical framework. *Chick v. Cty. of Suffolk*, 546 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("Section 1983 employment discrimination claims asserted as equal protection violations are evaluated under the same standards as Title VII claims."); *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (using the *McDonnell-Douglas* framework to weigh discriminations claims brought under § 1981, § 1983, and NYSHRL § 296); *St. Louis v. New York City Health & Hosp. Corp.*, 682 F. Supp. 2d 216, 237 (E.D.N.Y. 2010) (analyzing gender discrimination claim under § 1983 via *McDonnell-Douglas*).

Under the first step, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination." *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 896 (2d Cir. 2012) (summary order). If he establishes all four prongs, he has made a *prima facie* case that supports a presumption of unlawful discrimination. *Id.* The burden then shifts to the defendant "to proffer a 'legitimate, non-discriminatory reason' for the challenged employment action." *Id.* If he does so, "the burden then shifts back to the plaintiff to show that the defendant's reason is 'merely . . . a pretext for unlawful discrimination.'" *Id.*

An inference of discrimination can arise from circumstances including, but not limited to, "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)) (quotation marks omitted).

Here, Plaintiff's gender and racial discrimination claims are premised on three theories: general discrimination, disparate treatment, and hostile work environment. To show disparate treatment, Plaintiff must establish that he was treated differently than an employee outside of the protected class who was similarly-situated to Plaintiff in all material respects. *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016) (summary order). A hostile work environment is "a workplace setting 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive working environment.'" *Brodt v. City of New York*, 4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." *Id.* (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004)).

### A. Gender Discrimination

Plaintiff's gender discrimination claims are based on the following facts: in a memorandum filed in February 2011, DeNisco referred to Plaintiff with a female pronoun; Lai was given early tenure; and the last three professors given tenure were all women. ECF No. 38-1 ¶¶ 95-96, 153.

These facts do not support Plaintiff's gender discrimination claims under any of the theories provided. DeNisco's single reference to Plaintiff using a female pronoun, even if intended to discriminate, cannot support an inference of gender discrimination or a hostile work environment. As for Lai, she was not similarly situated to Plaintiff; she was not investigated for research and ethical conduct and was not found to have committed violations. *See Chao*, 476 F. App'x at 896-97 (finding plaintiff was similarly situated to a defendant when both were subject to the same result of a research misconduct investigation). Defendants are therefore entitled to summary judgment on Plaintiff's fifth and tenth claims.

**B.     Racial Discrimination**

Plaintiff's racial discrimination claims meet the same fate. No reasonable jury could find Plaintiff was discharged because of his race based on several offhand comments made to Plaintiff and the overall manner in which Plaintiff was treated by Defendants. Plaintiff seems to acknowledge as much in his deposition. ECF No. 32-4 at 21 (when asked what DeNisco did that indicated he had a racial bias, "I wouldn't say things he did specifically, you know, gave me those impressions."). There are insufficient facts supporting both an inference of discrimination and a hostile work environment.

The same is true for Plaintiff's disparate treatment theory. Gaygen was not subject to an investigation into research misconduct as was Plaintiff. *See Chao*, 476 F. App'x at 896-97. And, more importantly, Gaygen was ultimately discharged in the same manner as Plaintiff. ECF No. 32-1 at 12. Defendants are thus entitled to summary judgment on Plaintiff's first, third, eighth, and twelfth claims.

## V. Retaliation Claims

Plaintiff's remaining claims—his retaliation claims under §§ 1981 and 1983 and NYSHRL § 296—are analyzed under the same three-step burden shifting analysis used for Title VII claims. *Hicks*, 593 F.3d at 164. "First, the plaintiff must establish a *prima facie* case of retaliation by showing: '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Id.* (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)) (quotation marks omitted). "The plaintiff's burden in this regard is '*de minimis*,' and 'the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id.* (quoting *Jute*, 420 F.3d at 173).

"If the plaintiff sustains this initial burden, 'a presumption of retaliation arises.'" *Id.* (quoting *Jute*, 420 F.3d at 173). "The defendant must then 'articulate a legitimate, non-retaliatory reason for the adverse employment action.'" *Id.* (quoting *Jute*, 420 F.3d at 173). "If so, 'the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action.' *Id.* (quoting *Jute*, 420 F.3d at 173). "A plaintiff can sustain this burden by proving that 'a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause . . . ." *Hicks*, 593 F.3d at 164-65 (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).

Plaintiff's retaliation claims fail for several reasons. First, Ponton declined to renew Plaintiff's employment contract *before* Plaintiff filed his discrimination claim with the OECD. Ponton did confirm his non-renewal after the complaint was filed, but the initial decision could not have been a retaliation for Plaintiff filing the complaint.

Second, Plaintiff has put forth no facts that Defendants knew he filed the complaint or that there was a causal connection between filing it and his discharge. The record shows instead that Plaintiff was fired because of misconduct and declining support among the faculty. Consequently, Defendants are entitled to summary judgment on Plaintiff's second and eleventh claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion, ECF No. 32, is GRANTED. The Clerk of Court is directed to enter judgment in Defendants' favor and close this case.

IT IS SO ORDERED.

Dated: March 25, 2019
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court